MUSSEY ESSEY, Appellant, v. JOHN BUSHAKRA, SALIMA BUSHAKRA, KATHLEEN ARMOUR LONG, CHARLES W. GERMAN, Trustee, A. F. ROBINSON, Trustee, WADISH (CHARLES) BUSHAKRA, SALIM (SAM) BUSHAKRA, FRED WALKER and BEATRICE YEAGER.

Division One, June 8, 1923.

1. **FRAUDULENT CONVEYANCE: Deed From Husband to Wife: Presumption.** Where the evidence shows that the wife had no money of her own, and that her husband did have money in excess of the purchase price of real estate and the improvements placed thereon by him, and that after the property was conveyed to him he took possession, made improvements, rented it and collected the rents, the·presumption is that he purchased and paid for the property with his own money; and in the absence of satisfactory evidence that his wife had, then or subsequently, any money of her own, a conveyance by him to her, for an expressed though no actual consideration, is fraudulent as against his creditors.

2. ————: ————: **Statements of Existing Indebtedness: Self-Serving Declarations.** Statements by a husband and wife, made at the time he conveyed property to her and after a suit had been instituted by his creditor on his accepted bills of exchange, that the deed was being made because he was indebted to her, and that they wanted her children alone to inherit the property and ·did not want his children by a former wife to inherit it, are of no probative force in the absence of any showing of the manner in which said indebtedness arose or to how much it amounted, and besides are self-serving.

3. ————: **Ratification: Purchase of Other Claims: Garnishment.** A judgment creditor has a right to strengthen his lien against the property by purchasing other claims being asserted as superior to his, whether they are valid or invalid. A judgment creditor, having brought suit in equity to set aside a conveyance by the debtor· to his wife as being made in fraud of his creditors, does not ratify the fraudulent transactions by seizing, under garnishment issued under execution on his judgment, the money for which another note, secured by deed of trust on the property and sold by the debtor, and then by surrendering, under agreement between the debtor and the purchaser of said note, the money so seized

and taking a transfer of the note to himself. Such transaction, by which the judgment creditor obtained said other note, is to be regarded as an attempt to clear the property from the incumbrance, in order to clear the way for his suit to cancel the fraudulent conveyance.

4. ——: ——: **Estoppel: Reserving Right to Contest.** The judgment debtor has a right to buy his peace by buying, by quit-claim deed, the outstanding equity of redemption, alleged to be superior to his judgment lien, whether or not it be a superior lien. He does not, by taking a quit-claim deed from a person who claims as *mesne* grantee from the wife, in which it is expressly recited that he reserves the right to contest, and declares he intends to contest, as fraudulent and void, the wife's deed of trust, estop himself from asserting that the deed from the husband to the wife and the wife's deed of trust were made for the purpose of defrauding him.

5. ——: **Dower: Buying From Subsequent Grantees.** A judgment setting aside a deed by a husband to his wife as void, in that it was made by the husband to defraud his creditors, does not extinguish the wife's dower in the property so conveyed to her. Nor can the judgment creditor, by receiving deeds from her subsequent fictitious grantees, extinguish her dower. He cannot at the same time assert that the husband's deed· to the wife is fraudulent and her deed to subsequent grantees is valid.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED (*with directions*).

*A. N. Gossett* and *Stubenrauch & Hartz* for appellant.

(1)   This is an action in equity. In such cases this court will review the evidence and render such judgment as the trial court should have given. This court is not bound in equity by the findings *nisi.* Courtney v. Blackwell, 150 Mo. 245; Myers v. Schuchmann, 182 Mo. 159; First National Bank v. Fry, 216 Mo. 24; Gill v. Newhouse, 178 S. W. 495; Herryford v. Moore, 181 S. W. 389.   (2)   Property acquired by husband and wife during coverture, in the absence of any pleading or evidence

that it was purchased with the separate means of the wife, is presumed to have been purchased with the property of the husband. Hoffman v. Nolte, 127 Mo. 120; Patton v. Bragg, 113 Mo. 595; Halstead v. Mustion, 166 Mo. 488; Crump v. Walkup, 246 Mo. 280; Smelser v. Meier, 271 Mo. 178; Lemp Brewing Co. v. Correnti, 177 S. W. 612. It devolved upon Mrs. Bushakra to rebut this presumption that the Brooklyn Avenue property was purchased solely by her husband's funds and it will not be seriously contended that "this presumption was rebutted by her most unreasonable, contradictory and unsatisfactory, if not absolutely incredible, story." Hoffman v. Nolte, 127 Mo. 120. (3) The transfer by the husband, of the Brooklyn Avenue property to his wife, Salima Bushakra, is fraudulent and void as against the then creditors of the husband, he having insufficient property remaining to satisfy his debts, including plaintiff's claim. A voluntary conveyance made by a debtor in embarrassment or doubtful circumstances, without ample means remaining to satisfy his then existing debts, is fraudulent in law as to all who were creditors at the time of the conveyance. The burden of proof rested upon the defendant to show that this transfer was without fraudulent intention. Patten v. Casey, 57 Mo. 118; Walsh v. Ketchum, 84 Mo. 427; Snyder v. Free, 114 Mo. 360; Hoffman v. Nolte, 127 Mo. 120; Citizens Bank v. McElvain, 280 Mo. 505; Barrett v. Foote, 187 S. W. 67; Armour & Co. v. Harvey, 240 S. W. 807; Miller v. Allen, 192 S. W. 967; Bump on Fraudulent Conveyances (3 Ed.) pp. 267, 277; Secs. 2275, 2276, 2280, R. S. 1919. (4) There is no estoppel against plaintiff in this case. Plaintiff brings this action to have his judgment satisfied out of this Brooklyn Avenue property and which he claims is superior and prior in law and equity to any of the claimed rights of the defendants under the fraudulent deeds made by John Bushakra and his wife. The taking of a quitclaim deed from the holder of the straw title did not merge his judgment lien, and does estop

plaintiff from asserting his prior and superior right to have his judgment satisfied out of this property. Bush v. White, 85 Mo. 339.; Cummings v. Powell, 97 Mo. 524; Denbo v. Boyd, 194 Mo. App. 121; Waddell v. Chapman, 238 S. W. 481; 21 Corpus Juris, 1070. No merger of plaintiff's judgment lien and the straw title was claimed in defendant's pleading or evidence. By the very terms of said deed plaintiff expressly reserved his right to contest the wife's $3200 mortgage, and further, merger only occurs when no adverse claim intervenes which might prejudice the grantee. Collins v. Stocking, 98 Mo. 290; Williams v. Brownlee, 101 Mo. 309; Ess v. Griffith, 128 Mo. 50; Hayden v. Lauffburger, 157 Mo. 88; 2 Wash. on Real Property (5 Ed.) 202. Plaintiff's only purpose in taking this straw title was to eliminate from the case all possible claims by the party having this title, and avoid necessity of a receivership as to the rents. To constitute an estoppel or merger against plaintiff in favor of the defendant's mortgage, this mortgage must have been part of the consideration for the quitclaim deed, that is, this mortgage must have been deducted from the purchase price, or assumed, neither of which is true. Brooks v. Owen, 112 Mo. 251; Stewart v. Omaha Loan and Trust Co., 283 Mo. 364; Dunaway v. Alewel, 204 S. W. 726.

*Haff, Meservey, German & Michaels* and *Samuel D. Newkirk* for respondents.

(1) The evidence on vital questions of the case being oral, this court will defer to the finding of the trial court and affirm the judgment. Pleasant Valley Land Co. v. Bridges, 209 S. W. 881; Milan Bank v. Richmond, 213 S. W. 434; McKinney v. Hawkins, 215 S. W. 250; Meek v. Hurst, 219 S. W. 619; Hunnell v. Zinn, 184 S. W. 1154; Price v. Rausche, 186 S. W. 968; Furthey v. Potts, 204 S. W. 180; Laundy v. Girdner, 238 S. W. 788; Creamer v. Bivert, 214 Mo. 473; Amerton v. Cox, 199 S. W. 185; Walker v. Wallis, 186 S. W. 1041. (2) The evi-

dence shows the property in question was purchased with Salima Bushakra's money. (3) The conveyance to Salima Bushakra and the deed of trust to Charles W. German, Trustee for Salima Bushakra, were not made for the purpose of hindering or defrauding creditors. DeBerry v. Wheeler, 128 Mo. 84. (4) By acquiring the fee-simple title to the property by the quitclaim deed from Beatrice A. Yeager (the fee-simple title thus acquired being subject to the lien of the deed of trust in controversy, as the warranty deed to Yeager expressly recites), and thereafter acting under the title thus acquired, and receiving benefits under his title deed, plaintiff is estopped to question, and barred and precluded from questioning, the validity of the deed of trust in controversy. Milan Bank v. Richmond, 280 Mo. 30; Hector v. Mann, 225 Mo. 228; Thompson v. Cohen, 127 Mo. 215; Chase v. Williams, 74 Mo. 429; Austin v. Loring, 63 Mo. 19; Gutzwiller v. Lackman, 23 Mo. 168; Torreyson v. Turnbaugh, 105 Mo. App. 439; Taylor v. Short, 107 Mo. 384.

SMALL, C.—Suit in equity, by plaintiff, a judgment creditor of John Bushakra, and his sons, Charles and Sam Bushakra, to set aside certain deeds to certain lots on Brooklyn Avenue in Kansas City, Missouri, made by said John Bushakra and wife, Salima Bushakra, and other defendants claiming under them, and a first deed of trust on said property in favor of said Salima, for $3200, and a second deed of trust for $2800 in favor of said John Bushakra.

The petition, among other things, states that on the 11th day of October, 1920, the sheriff of said Jackson County, under a writ of execution issued on plaintiff's judgment, had levied on John Bushakra's interest in said real estate, and that thereafter, with knowledge of said levy, defendants Robertson and Walker pretended to purchase said $2800 note from said John Bushakra, and pretended to pay him $1000 therefor. That defendant Beatrice Yeager, and her predecessors in title, Kathleen

Armour Long and Vickry Prine, pretended to hold title to said property, but took it for the purpose of cheating plaintiff in the collection of his judgment, and her and their claim is and was fraudulent and void, as to plaintiff.

The answer of defendant John Bushakra admits that he is the beneficial owner of the property, but denies every other allegation of the petition.

The answer of defendant Salima Bushakra, and the trustee in the deed of trust securing her $3200 first mortgage note, puts the allegations of the petition in issue, and pleads that plaintiff's judgment was paid in full by taking a quit claim deed for said property from said Beatrice Yeager, who claimed under Kathleen Armour Long, which deed recited that said real estate was conveyed to said Beatrice Yeager subject to the $3200 deed of trust in favor of defendant Salima Bushakra, both of which deeds plaintiff caused to be recorded in the Recorder's office. That by taking said deeds, the plaintiff recognized the validity of the title of the parties making the same, and of the validity of said $3200 deed of trust, and is estopped from denying that it is a valid lien on said real estate.

The reply put the new matter in issue, and further stated that plaintiff, being advised that a sale of said land, as prayed for in the petition, would be subject to a contingent dower right in the defendant Salima Bushakra, unless a voluntary conveyance from said Beatrice Yeager, mesne grantee of said defendants, John and Salima Bushakra, could be had, plaintiff's attorney paid said Beatrice Yeager $275 for a quitclaim deed, with the express stipulation and agreement, recited in said quitclaim, that by accepting said quitclaim deed "the grantee herein and those claiming under him, do not acknowledge as binding or of any force or effect" the mortgage or deed of trust and $3200 note of the defendant Salima Bushakra, but "does deny the validity of said mortgage deed of trust, and reserves the right to deny, contest and defend against" the same.

The evidence showed that defendant John Bushakra, and his wife, Salima Bushakra, were born in Syria, and they, with Charles and Sam Bushakra, sons of John Bushakra, by his first wife, came to Kansas City in about the year 1894, where they resided a year or so, and then went to St. Joseph, Missouri; the sons were then verging on young manhood; the stepmother, Salima, was much younger than her husband, John. They lived in St. Joseph about a year. The father, and perhaps the sons with him, owned and operated two fruit and candy stores. The father and his sons sold out their stores in St. Joseph and went to South America in 1897, and the wife and stepmother and her two children returned to her parents in Syria. In South America the father and sons engaged in business, and, on October 7, 1902, they accepted two bills of exchange in favor of Maksoud Brothers of Rio de Janeiro, due respectively March 7th and January 7th, 1908, on which due dates, one, with interest, amounted to $1202.65, and the other, with interest, amounted to $1344.65; each bore interest at the rate of one per cent per month from maturity. These bills of exchange were given for goods purchased. Before the maturity of said bills of exchange, sometime in the year 1904, the father and sons sold out their business in South America, absconded and returned, with some $6,000 or $7,000, the proceeds of such sale, to Kansas City, leaving said bills of exchange unpaid. About two weeks after they arrived in Kansas City, the wife and stepmother, Salima, also arrived in Kansas City. Soon afterwards, a grocery store, located at 532 Cherry Street in Kansas City, was purchased for $2,000, and the title to this property was taken in the name of the wife, where it remained until September, 1920, when she sold it. In 1913, the property in controversy on Brooklyn Avenue, was purchased for $2800, $500 of which was paid in cash, the balance being represented by a mortgage of $2300, subject to which the title was taken. The title to this property was taken in the name of John Bushakra, the husband. At the

January term, 1916, Mussey Essey, assignee of the bills of exchange, brought suit thereon in the Circuit Court of Jackson County, against said John, Charles and Sam Bushakra. The suit remained pending until the November term, 1919, when judgment was entered therein against said defendants for the sum of $6137.50. On February 8, 1916, John Bushakra and his wife, Salima, made a voluntary conveyance of the property on Brooklyn Avenue in question to Marjory Meglasson, with a recited (but no actual) consideration of $2500. On the same day, she conveyed the property back to said Salima Bushakra, also without any actual, but a recited consideration of $2500. At the time the property was thus transferred to her, the wife claimed that her husband owed her some money, and it was transferred to her on account of this claim, but also that her own children might inherit it all, which would not be the case if the title remained in the husband, as he had children by his first wife. Afterwards, in July, 1918, the wife executed a deed of trust on the property in favor of her husband for $2800, which, she testified, she gave him as a gift in order to raise money to make a trip to the old country to visit his brother. This deed of trust, without being paid, was satisfied on the record May 21, 1920. On May 20, 1920, said defendant, Salima Bushakra, her husband joining in the deed, conveyed said property to Vickry Prine, who executed to said defendant Salima Bushakra a promissory note for the sum of $3200, due in five years, at six per cent, secured by deed of trust on said property, and defendant Robertson gave a check for $2800 to defendant John Bushakra. The wife refused to make the conveyance, unless the husband got that much in cash, but the giving of the check was a mere formality, of which the wife probably knew nothing, but which was known by the husband and his son, Sam, who took part in bringing about the transaction. On the next day, May 21, 1920, for the express, but no actual, consideration of $6,000, said Vickry Prine conveyed said real estate to

Kathleen Armour Long, subject to said $3200 deed of trust in favor of defendant Salima Bushakra. The grantee, Long, was a fictitious purchaser procured by the defendant Sam Bushakra. John Bushakra thereupon surrendered Robertson's check for $2800, and said Kathleen Armour Long executed a note in his favor for $2800, due in two years at six per cent, secured by deed of trust on said property, subject to the prior deed of trust of $3200 in favor of defendant Salima Bushakra. Afterwards, on the 21st day of June, 1921, for the express consideration of one dollar, but no actual consideration, said Kathleen Armour Long conveyed said property to Beatrice Yeager, subject, as stated in the deed, to both of said deeds of trust. This was also a fictitious transfer. Defendant Walker, on October 12, 1920, purchased said $2800 note from defendant John Bushakra for $1000.

After this suit was instituted, and before trial, the plaintiff took the deposition of the defendants John and Salima Bushakra, in which they both testified, in effect, that it was her money that purchased the Cherry Street property; that she brought the money back from Syria with her, and that she had received it as an inheritance from her father and mother. That she owned and operated the grocery store at Cherry Street, from the time they bought it in 1904 until 1913, when they purchased the property in question on Brooklyn Avenue, and, without her knowledge, at the instigation of his sons, the title was taken in the name of the husband, John Bushakra. But it was paid for with the money she made in her grocery store, and she bought and sold the merchandise, and herself attended to the work of running said grocery store, her husband, John Bushakra, being incapacitated by age from doing business. But the business was always done in his name, and he received and kept the money arising from it. During the same time, it appears that the two sons operated stores in Kansas City, the title to which was in their wives' names.

In her deposition, the wife said her parents gave her the money, and the husband in his deposition stated that she received it as an inheritance from her parents. But, after giving his testimony, the husband refused to sign his deposition, because he said he had testified falsely.

At the trial, the defendant Salima Bushakra testified: That when her husband sold out at St. Joseph in 1897 and went to South America, and she back to Syria, he gave her $2,000 in money. That she had this exchanged into five-dollar gold pieces, which she sewed into the lining of her coat, and carried it in this maner from America to her father's house in Syria. There she gave it to her father, who put it in a drawer in a table in his dwelling and it was kept there until 1904, when he gave it to her, and she again sewed it in her coat, as before, and brought it back in this manner to the United States. That she also brought back some rugs and laces worth $1000 to $1500, which her husband sold and received the money for.

Shortly before the trial, John Bushakra, who is said then to have been about eighty years of age, suffered an injury and was confined to the hospital, and he gave another deposition at his own suggestion, stating that what he had formerly sworn to was false, and, in effect, that he did not want to die without telling the truth in regard to the transaction in question. He stated that his wife never received any money from her people. That he sent her $200 to pay her passage from Syria back to America in 1904. That he never gave her any money when they sold out in St. Joseph, except sufficient sum to take her back to Syria to her father's house, and that the money paid for the Cherry Street property was money he had brought back from South America, and, in effect, was part of the proceeds he had received from the sale of the goods he had purchased from the Maksoud Brothers of Rio de Janeiro in payment for which he had executed the two bills of exchange, upon which their assignee afterwards sued him and received judgment in the Circuit Court at Kansas City.

The two sons, Charles and Sam, also testified at the trial, that they knew of no money of her own which their stepmother ever had, and that the money for both the Cherry Street and Brooklyn Avenue property was their father's money. But one of them said that she did bring back some rugs and laces worth two or three hundred dollars. Sam testified that he negotiated the purchase of the Brooklyn Avenue property. That it was bought by his father. That his father made the cash payment therein with his own funds. That his father improved the property by building a house thereon, costing some $3,000, which his father paid for. That he, Sam, drew the checks for his father to make such payment. The evidence also showed that the father made a written lease of the Brooklyn Avenue property on October 15, 1915, for five years, and that he himself always collected the rent, but in the summer of 1920 the wife asked for the rent, but the tenant made out the check in his name and let them divide it— "squabble amongst themselves." After September 15, 1920, the tenant paid the rent to plaintiff's attorney, who had garnisheed it under execution, amounting to $275. On January 10, 1920, plaintiff's attorney, for the plaintiff, obtained a quitclaim deed from Beatrice Yeager for $275, and took possession of the property. His purpose was, so he testified, to cut out the dower of the defendant Salima Bushakra, who would still have a dower right in the property in case the deed and deeds of trust, mentioned in the petition, were simply set aside, as therein prayed. But that the deed to him contained the reservation and stipulation that he did not thereby recognize the validity of the $3200 deed of trust held by said defendant Salima Bushakra, all as alleged in the reply.

The plaintiff's evidence further showed that after the suit was brought he had an execution issued on his judgment, garnished the tenant in the property in controversy, and also garnished the Pioneer Trust Company, in which the defendant John Bushakra had a cashier's check for $2300, in a safety deposit box. That after said

garnishment was issued, John Bushakra voluntarily gave an order on the Pioneer Trust Company to turn over to plaintiff said cashier's check for $2300, under an agreement with plaintiff that the plaintiff would pay $1000 out of the same to defendant Walker, who had purchased the $2800 deed of trust from said John Bushakra for that sum, and which he had used in purchasing said $2300 cashier's note. Said Walker agreed, upon receiving back his $1000 from the plaintiff, to transfer and deliver to the plaintiff said $2800 note. This arrangement was carried out, plaintiff paying said Walker the $1000, and receiving the note for $2800.

So that, when the case was tried, the plaintiff had purchased the equity from defendant Beatrice Yeager and received possession of the property under his deed, in order to cut out the dower of defendant Salima, in case the deed to her by her husband was set aside, and plaintiff also, by garnishing the Pioneer Trust Company and impounding thereby said $2300 of defendant John Bushakra, realized thereon $1300 in cash and said $2800 note of said John Bushakra.

From a judgment in favor of defendant Salima Bushakra, refusing to set aside her note and deed of trust for $3200, the plaintiff appealed to this court.

I.   It is not claimed by the plaintiff that the Brooklyn Avenue property, on which the wife claims her said deed of trust, was purchased with the proceeds of the sale of the Cherry Street property, which was sold by the wife, after this suit was brought, for $2500, and which she received. The plaintiff did not levy his execution upon that property, nor seek to charge it with the payment of his judgment by his petition in this case. But we think the evidence as to whose money paid for the Cherry Street property is germane to the question of whose money paid for the Brooklyn Avenue property, which is in controversy before us. We have set out the evidence, and we are satisfied that the wife brought no money with her from Syria

Fraudulent Conveyance.

in 1904; that her husband did not give her $2,000 or any money, except sufficient to pay her expenses, when she left St. Joseph for Syria, and he left St. Joseph for South America in 1897. But, we are satisfied, that he bought and paid for the Cherry Street real estate and grocery-store business, after his wife's return to Kansas City in 1904, with the money he brought from South America at that time, and that he put the title in her name for the purpose of defrauding his creditors in South America, to whom he owed the bills of exchange on which the plaintiff in this case obtained judgment against him and his two sons in 1919.

We do not think the rugs and laces the wife claims to have brought over with her from Syria in 1904, were of any considerable value, or any appreciable money therefrom was used in the purchase of the Cherry Street property or the grocery store and business thereon. She says said store and business was always run in her husband's name, and that he always claimed and received the proceeds and profits, although it was hers. The grocery store and business was not sold out until shortly before this suit was tried, so that no proceeds from its sale could have been invested by the husband in the Brooklyn Avenue property. So it does not appear what, if any, profits were made and saved from the business of the grocery store or could have been or were put into the Brooklyn Avenue property by the husband. The Brooklyn Avenue property was bought in 1913 by the husband—the wife appears not to have had anything to do with its purchase—for $2800, of which $500 was paid down in cash, and there was a mortgage for $2300 on the property, to which it was taken subject. After purchasing it, the husband erected a building on the property at a cost of about $3,000, and the uncontradicted evidence is that he paid for this building with the money he claimed as his own. In fact, the only money the evidence satisfactorily shows that he had at any time after he returned to Kansas City from South America in 1904 was the $6,000 or $7,000 which he brought with him. He could

have had sufficient of this sum left, after paying for the Cherry Street property, to buy and build on the Brooklyn Avenue property with the assistance of the rents he received from that property, after putting the building thereon. He always received the rents therefrom until he transferred it to his wife in 1920. It rented for about $43 a month, which he received for at least five years before that time. The deed to the Brooklyn Avenue property having been made to the husband, and possession having been taken, and improvements to the amount of $3,000 made and paid for by him, and being rented the rents collected by him as aforesaid, the presumption is, that he purchased and paid for said property and improvements with his own money, in the absence of satisfactory evidence that it was his wife's money. We can find no such satisfactory evidence in the record.

But, it may be said that when the deed was made by the husband to the wife conveying the property to her in 1916, both he and she stated at the time it was made to her because the husband was indebted to her, and they wanted her children alone to inherit it and did not want his children by his first wire to share in such inheritance, which they would do if the property stood in his name at the time of his death. But this deed and these statements were made just after the suit against the husband and his sons was instituted by the plaintiff on his bills of exchange, and there is no showing made of how such alleged indebtedness arose, or how much it amounted to. Furthermore, we do not consider such self-serving declarations, made after such suit was brought, as of any substantial probative force.

We hold, therefore, that the plaintiff was entitled to have said transfer from the husband to the wife, and all subsequent deeds made to the fictitious grantees, including the $3200 note made to the wife, mentioned in the evidence and in the petition, set aside as fraudulent and void as against his judgment on said bills of exchange.

II.   But it is said that the plaintiff waived or rati-
fied the fraudulent transactions complained of, if they
were fraudulent, by seizing, under his garnishment, the
$1000 which the husband obtained from the sale of his
$2800 note to Walker, and thereafter, under
agreement with the husband and Walker, re-
turning said $1000 to Walker and receiving from him said
$2800 note.  In support of this contention, learned coun-
sel cite Milan Bank v. Richmond, 280 Mo. 30, in which it
was ruled that where a judgment creditor receives pay-
ment of his judgment from the proceeds of the sale of
land by the judgment debtor, he cannot avoid such sale
as being in fraud of his rights as the holder of another
debt or obligation which he had against the debtor.   In
that case, defendant, Richmond, was surety on two notes
held by the bank, one for $3280 and one for $7,000.   The
plaintiff bank obtained judgment on the $3280 note, which
was a lien on certain lands of defendant, which defendant
sold for a fair price to a third party, out of which the
amount of the judgment was paid to the circuit clerk,
who paid it to the bank and the surplus was paid to the
defendant by the purchaser without notice that the de-
fendant intended to defraud the bank out of such surplus.
Afterwards, the bank attached the same land in a suit
upon its $7,000 note, claiming that said sale and transfer
thereof was made to defraud creditors.   The court, how-
ever, held that the bank could not complain that the trans-
fer was fraudulent, although it also held said $7,000 note
against defendant, because by receiving part of the pro-
ceeds to satisfy its judgment on the $3280 note it ratified
such transfer.

We think the case at bar is distinguishable from the
Milan Case.  This suit was not only brought to set aside
the transfer to the wife, but also to cancel and set aside
the huband's $2800 note.  After the suit was brought, and
during its pendency, the $2800 note was sold by the hus-
band for $1000, which was seized by a garnishment by
plaintiff issued under execution on his judgment.  Plain-

*Ratification.* (margin note)

299 Mo.—11.

tiff then under agreement with the husband and the purchaser of the $2800 note surrendered the $1000, which he had seized by his garnishment, to said purchaser, and took a transfer of said note to himself. It seems to us that this transaction simply amounted to the plaintiff obtaining the $2800 note, so as to clear the property from said incumbrance, the same as would have been accomplished had he prosecuted his suit successfully to judgment against the holder of said note, or had purchased said note from said Walker without reference to said garnishment. Plaintiff had a judgment against the property and he had a right to strengthen his lien against the same by purchasing other claims, valid or invalid, which were asserted as superior thereto. [Cummings v. Powell, 97 Mo. 524, and cases cited.]

In the case of Milan Bank v. Richmond, supra, the bank had bought no claim asserted against it by a third party to strengthen the lien of its attachment. That case is, therefore, not parallel to this case.

III. It is also claimed by respondent that, by purchasing the equity of redemption from Beatrice Yeager, the plaintiff estopped himself from claiming that the transfer from the husband to the wife in 1920, through Marjory Meglasson, was fraudulent, because said Beatrice Yeager claimed title by mesne conveyances through said conveyance of the husband to the wife. But we are not of that opinion. The deed to the plaintiff's attorney by said Beatrice Yeager expressly stated that he reserved the right and intended to contest the wife's deed of trust as fraudulent and void. Said equity of redemption was an outstanding title, alleged to be superior to the lien of the plaintiff's judgment, and under the decisions of this court, he had a right to buy it in. Whether the claim of said Beatrice Yeager was valid or invalid as against his judgment lien, plaintiff had a right to buy his peace. [Cummings v. Powell, 97 Mo. supra, and cases cited therein.]

Estoppel.

IV. But we do not think appellant has a right, under his purchase of said equity of redemption, to claim that the wife's dower in said Brooklyn Avenue property was also acquired by him. If the plaintiff should claim **Dower.** title to the property as against the wife solely under this conveyance, he would recognize the validity of her deed of trust, because he would occupy the shoes of his grantor, Beatrice Yeager, and could not question the validity of said deed of trust as a purchaser from her. He can only question its validity, as a judgment creditor of the husband. But his judgment was not a lien on said property prior to, but only subject to, the wife's dower. In case a husband transfers his property to his wife to defraud his creditors, a creditor is entitled to have said conveyance set aside as in fraud of his right. But if he does institute proceedings for that purpose, he cannot have the conveyance set aside free and clear of the wife's dower. If the conveyance of the fee to her by the husband is set aside in such a proceeding, her dower would be revived. The title to the property would then stand as if no conveyance had been made to her by the husband. She does not lose or forfeit her dower in her husband's property, because he transfers and she receives a conveyance of the fee from him in fraud of his creditors, which is afterwards set aside by such creditors. All the plaintiff is entitled to in this case, as against the wife, and the other holders under her, all of whom were fictitious, and none of whom were innocent purchasers for value, according to the evidence and the pleadings of the plaintiff, is to have the deed to her from her husband, and all subsequent deeds and deeds of trust set aside as fraudulent and void as to the plaintiff, as a judgment creditor of the husband. This would leave the wife with her dower intact in the property.

We, therefore, reverse the judgment with directions to the lower court to set aside its judgment herein, and enter up judgment for plaintiff, as prayed in his petition, but reserving to the defendant Salima Bushakra her right

of dower in said property, as the wife of defendant John Bushakra, and that said property be sold to satisfy plaintiff's judgment, or so much thereof as remains unpaid as the property of said John Bushakra, subject to his said wife's right of dower. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by Small, C., is adopted as the opinion of the court. All of the judges concur.