Mary E. Ragsdale, John W. Ragsdale, James E. Ragsdale, Lela Spencer, Sallie Eller and Bird Selsor v. Daisy Achuff, and Daisy Achuff, Executrix of Estate of Ed R. Achuff, Appellants.—27 S. W. (2d) 6.

Division Two, April 7, 1930.

1160

*L. B. Gillihan* and *Nat G. Cruzen* for appellants.

*Fry & Hollingsworth, John C. Leopard* and *Dean H. Leopard* for respondents.

1162

HENWOOD, C.—By their petition in two counts, the plaintiffs seek, first, to recover the value of certain shares of stock in a corporation, and, second, to have vested in them the title to certain real estate, by virtue of certain contracts entered into by and between them and Ed R. Achuff, deceased. The suit was filed in the Circuit Court of Daviess County, and transferred to the Circuit Court of Grundy County, upon the plaintiffs' application for a change of venue. That court, sitting in equity, found for the plaintiffs on both counts of their petition and rendered judgment accordingly. The defendants have, in due course, perfected an appeal to this court.

In the first count of the petition, it is alleged that Winnie Achuff, a resident of Gallatin, in Daviess County, died childless and intestate, on the —— day of February, 1917, leaving, as her heirs at law, Ed R. Achuff, her husband, and the plaintiffs, Mary E. Ragsdale,

her mother, John W. Ragsdale and James E. Ragsdale, her brothers, and Sallie Eller, Lela Spencer and Bird Selsor, her sisters; that at the time of her death, the said Winnie Achuff owned fifteen shares of stock, of the par value of $100 each, in the Gallatin Granite & Marble Works, a corporation; that on February 21, 1917, after the death of Winnie Achuff, Ed R. Achuff entered into a written contract with the plaintiffs, whereby he agreed, for and in consideration of the transfer to him of the interests of the plaintiffs in said shares of stock, to bequeath, by will, said shares of stock to the plaintiffs, or their heirs, in equal parts, and, in the event he sold said shares of stock, to bequeath the proceeds of such sale, or other property or money of equal value, to the plaintiffs, or their heirs, in equal parts, in lieu of said shares of stock; that he executed a will, in accordance with the provisions of said contract, and delivered it to W. S. Eller, with instructions to present it for probate upon his (Achuff's) death; that, thereafter, he sold said shares of stock and converted the proceeds of such sale into other personal property; that, on January 5, 1918, he married the defendant Daisy Achuff; that, on June 4, 1925, he died, and left surviving him said defendant as his widow; that, upon his death, there was admitted to probate in the Probate Court of Daviess County a certain instrument, purporting to be his last will and testament, by which he bequeathed all of his property to his widow, for and during her natural life, with the right to convert, use, sell or dispose of any or all of his property for her support and comfort, and, at her death, the sum of $5,000 to the plaintiffs, in equal parts; that his estate amounted to less than $5,000 in value; that his bequest to his widow violates his contract with the plaintiffs, and will result in defeating their rights under said contract; and that his widow, as executrix of his last mentioned will, now has charge of his estate, and claims the whole of his estate, as a beneficiary under said will, to the exclusion of the plaintiffs. Wherefore, the plaintiffs ask judgment against the estate of Ed R. Achuff for $5,000, as the fair market value of said shares of shock; and that such judgment be decreed to be a lien against all of his property; and for all appropriate relief.

In the second count, it is alleged that Winnie Achuff, at the time of her death, owned a part of Out-Lot 8 in the city of Gallatin, conveyed to her by N. B. Brown on January 1, 1902; that, after the death of Winnie Achuff, Ed R. Achuff entered into a contract with the plaintiffs, whereby he agreed, for and in consideration of the conveyance to him of the interests of the plaintiffs in said real estate, to devise said real estate, by will, to the plaintiffs; that, in accordance with said contract, he executed a will by which he devised to the plaintiffs all real and personal property of which he might die seized, it being understood between him and the plaintiffs that said will should be operative as to the real estate above

described, and delivered said will to W. S. Eller with instructions to present it for probate upon his (Achuff's) death; that, in order to make said contract effectual, Ed R. Achuff entered into a written contract with the plaintiffs, whereby he agreed, for and in consideration of the conveyance to him of the interests of the plaintiffs in the real estate above described (which conveyance was duly executed and delivered), to devise said real estate, by will, to the plaintiffs, and, in the event he conveyed said real estate, to devise to the plaintiffs, or their heirs, money or other real and personal property of equal value; that, on June 22, 1923, he undertook to convey said real estate to himself and his wife, the defendant Daisy Achuff, in an estate by the entirety, by conveying said real estate to F. E. Clingan, who, in turn, conveyed said real estate to Ed R. Achuff and Daisy Achuff; that the purported last will and testament of Ed R. Achuff, referred to in the first count, violates his contract with the plaintiffs relating to said real estate; that Daisy Achuff, as executrix of his last mentioned will, now has charge of his estate, and now asserts her ownership of said real estate as the survivor of Ed R. Achuff; that said conveyances of said real estate by Ed R. Achuff to Daisy Achuff, or to himself and Daisy Achuff, were without consideration and void, and in violation of his contract with the plaintiffs, and constitute a fraud on the plaintiffs; that said conveyances were made for the purpose of defeating the rights of the plaintiffs under said contract, as was well known to the defendant Daisy Achuff at the time of said conveyances; that the estate of Ed R. Achuff is insolvent; and that the plaintiffs have no adequate remedy at law. Wherefore, the plaintiffs pray that said conveyances be cancelled and for naught held; that the title to said real estate be vested in them, free from all marital claims of the defendant Daisy Achuff; that said purported last will and testament of Ed R. Achuff be construed to be without force or effect in so far as it conflicts with said contract; and for all appropriate relief.

In her separate answer, the defendant Daisy Achuff denies generally each and every allegation of the petition; and further answering, states that Winnie Achuff and Ed R. Achuff used and occupied the real estate described in the petition as their homestead until the death of Winnie Achuff; that a child was born of the marriage of Winnie Achuff and Ed R. Achuff and said child died in infancy; that, after the death of Winnie Achuff, the plaintiffs conveyed their interests in said real estate to Ed R. Achuff, and he continued to use and occupy the same as his homestead; that, after she married Ed R. Achuff, they used and occupied said real estate as their homestead until the time of his death, and since his death she has used and occupied the same as her homestead; that, prior to her marriage to Ed R. Achuff, he promised and agreed, if she would marry him, to "so place or fix" his homestead and

other property that it would "vest" in her, if she survived him; that, in consideration of said promise and agreement, she married him and lived with him as his wife until his death, and fully performed her part of said agreement; that, after their marriage, Ed R. Achuff agreed that, if she would pay for certain improvements on said real estate, he would cause the same to be so conveyed as to vest the title thereto in them as tenants by the entirety; that, in pursuance of said agreement, she expended large sums of her own money in making permanent improvements on said real estate, and the conveyances were made by which the title to said real estate was vested in them as tenants by the entirety; that, by virtue of said conveyances, she is now the sole and absolute owner of said real estate; that said conveyances of said real estate were made for the purpose of consummating said antenuptial agreement as well as the agreement relating to the improvements made on said real estate; and that, prior to the institution of this suit, she had no knowledge of any contract between the plaintiffs and Ed R. Achuff relating to or involving said real estate. Wherefore, she prays to be discharged.

The separate answer of Daisy Achuff, as executrix of the estate of Ed R. Achuff, and the reply of plaintiffs to the separate answer of Daisy Achuff, are general denials.

Allowing for alterations, omissions and additions, the following statement of the evidence is taken from the plaintiffs' brief:

"The plaintiffs' evidence shows that in the 'Nineties' Winnie Ragsdale married Ed R. Achuff, and thereafter, until her death on February 17, 1917, resided with him as his wife in Gallatin, Daviess County, Missouri. One child which died in early infancy was born of their union. Sometime during her marriage to Achuff, Winnie inherited from her father's estate the sum of $6,000 and, with the proceeds of this inheritance, she purchased and took title to a house and lot in Gallatin, which she and her husband occupied as their home until the time of her death, and which at the time of the death of Ed R. Achuff was of the reasonable value of $4,000. Out of this inheritance, she also purchased and owned, at the time of her death, fifteen shares of stock in the Gallatin Granite & Marble Works, a corporation, operated by Ed R. Achuff and one W. Glen Smith at Gallatin. All of the plaintiffs, with the exception of John W. Ragsdale, were present at Winnie's funeral in Gallatin on February 21, 1917. After the funeral, all of the plaintiffs present thereat, excepting James E. Ragsdale, had a conversation with Ed R. Achuff with reference to the property owned by Winnie at the time of her death. Mr. Cruzen, one of the attorneys for the defense in this case, was present as Ed R. Achuff's attorney. At this conversation Ed proposed to these plaintiffs that, if they would convey to him all of their interest in and to the aforesaid real and personal prop-

erty, he would make a will bequeathing and devising said property, personal and real, to Winnie's heirs, these plaintiffs. During this conversation, Ed said: '1 got this property from my wife, all of it. I have no people and I want her people to have it.' Mr. Cruzen said to Ed, 'Don't you know you are tying this property up mighty tight?' Ed then said, 'Yes, I know it. That is the way I want it.' The provisions of a contract or contracts to that effect were then read aloud. Such of these plaintiffs as were there present thereupon executed a quitclaim deed to said Ed R. Achuff to said real property. The evidence does not show when the signatures or acknowledgments of the absent plaintiffs were obtained, but it is conceded that said deed was thereafter duly signed and acknowledged by all of the plaintiffs and their respective spouses. At the same time, Plaintiffs' Exhibit No. 3, an authorization to the Gallatin Granite & Marble Works, bearing the names of all of the plaintiffs, to transfer the fifteen shares of stock standing in Winnie's name to Ed R. Achuff, was delivered to Ed R. Achuff; and thereafter the transfer was made upon the books of the corporation, a new certificate for fifteen shares being issued, to Ed R. Achuff. After the execution of the quitclaim deed and authorization to transfer the stock by such of these plaintiffs as were present at the conversation following the funeral, they went to their various homes. Shortly thereafter W. S. Eller, husband of plaintiff Sallie Eller, received from Ed R. Achuff the will devising to plaintiffs at his death all of his real and personal property and also received a contract signed by him agreeing to devise to plaintiffs said fifteen shares of stock in said Gallatin Granite & Marble Works, which documents W. S. Eller filed away in a vault. Said contract, plaintiffs' Exhibit No. 1, is in words and figures, as follows:

" 'I, Ed R. Achuff of the city of Gallatin, County of Daviess and State of Missouri, in consideration of the transfer and conveyance to me this day of fifteen (15) shares of stock in the Gallatin Granite & Marble Works, a corporation, which said being of the par value of one hundred ($100.00) dollars each, owned by my deceased wife, Winnie Achuff, at the time of her death, by Mary E. Ragsdale, the mother of my deceased wife, and John W. Ragsdale and James E. Ragsdale, brothers of my deceased wife, and Sallie Eller, Lela Spenser and Bird Selsor, sisters of my deceased wife, do hereby agree and bind myself, and my estate that I will, upon my death, will, devise and bequeath the said fifteen (15) shares of stock to said parties, the heirs of such as may be deceased, in equal parts share and share alike, but should I sell or transfer said shares of stock, then I agree and bind myself and my estate, to make a good and valid will devising to said parties in equal parts, share and share alike, the proceeds of such sale and conveyance, or other property or money of equal value to all of said parties, as aforesaid in lieu of said stock.

" 'In witness whereof, I have hereunto subscribed my name this 21st day of February, 1919.

" 'ED R. ACHUFF.'

"Said will, Plaintiffs' Exhibit No. 2, is in words and figures, as follows:

" 'I, Ed R. Achuff, of the City of Gallatin, County of Daviess and State of Missouri, do hereby make, ordain, publish and declare this instrument to be my last will and testament as follows, to-wit:

" 'First: I desire all my just debts and funeral expenses to be paid by my executor hereinafter named.

" 'Second: I hereby will, devise and bequeath all my property of every kind and nature and wherever situate, be the same real property or personal property, and all estate, rights, interests or privileges, be the same vested or contingent or expectancy in or to any real, personal or other property that I may own at the time of my death, or be possessed or seized of, to the mother, brothers and sisters of my deceased wife, Winnie Achuff, and to the heirs of such as may be deceased at the time of my death, as follows: To Mary E. Ragsdale, the mother, and John W. Ragsdale and James W. Ragsdale, the brothers, and Sallie Eller, Lela Spenser and Bird Selsor, sisters of my deceased wife, in equal parts, share and share alike, and should any one or more of said parties named be deceased at the time of my death then the share or portion hereby given to such deceased person or persons shall go to and vest in the heirs of such deceased person or persons.

" 'Lastly: I hereby make, constitute and appoint W. E. Eller, the husband of Sallie Eller, above named, to be executor of this my last will and testament and I hereby revoke any and all former wills and testaments by me made.

" 'In witness whereof, I hereunto set my hand and affix my seal, in the City of Gallatin, Missouri, this the 21st day of February, in the year of our Lord, nineteen hundred and seventeen.

" 'ED. R. ACHUFF.

" 'The above instrument was on this the 21st day of February, nineteen hundred and seventeen, signed, sealed, published and declared by said testator, Ed R. Achuff, to be his last will and testament in the presence of us, who at his request have subscribed our names thereto as witnesses in his presence and in the presence of each other.

" 'R. G. YATES,
" 'E. D. MANN,
" 'NAT. G. CRUZEN.'

"On the 27th day of March, 1917, Ed R. Achuff executed, and sometime thereafter delivered to plaintiffs, the following contract, Plaintiffs' Exhibit 6, in words and figures following, to-wit:

"'This contract and agreement made and entered into on this the 27th day of March, 1917, by and between E. R. Achuff of Daviess County, Missouri, as party of the first part, and Mary E. Ragsdale, John W. Ragsdale, Sallie Eller, James W. Ragsdale, Lela Spenser and Bird Selsor, of Shelby County, Missouri, as parties of the second part.

"'Whereas the said parties of the second part have this day conveyed to the said party of the first part the tract of land conveyed by N. B. Brown and wife to Winnie Achuff, as shown by the deed dated January 1st, 1902, and found of record in the office of the Recorder of Deeds of Daviess County, Missouri, in Book 83 at page 633, the said parties of the second part herein being the mother and brothers and sisters of the said Winnie Achuff.

"'Now, therefore, in consideration of said conveyance to him the said party of the first part, does hereby bind himself, his heirs, administrators, and executors by these presents, that he will at his death, in case he shall make any conveyance of the said real estate, will and devise to the said parties of the second part, their heirs, money or other property of equal value to or with land conveyed him, that has been acquired by the deed to him by the said parties of the second part.

"'In witness whereof, the said party of the first part has hereunto set his hand to duplicate hereof for each of the said parties of the second part.

"'E. R. ACHUFF.'

"Which said contract plaintiffs thereafter retained. On January 5, 1918, Ed R. Achuff married the defendant Daisy Achuff, who was then a widow, clerking in a retail store, at Chillicothe, Missouri, and until his death, on June 4, 1925, they lived in the home formerly occupied by Ed and his first wife. On June 22, 1923, Ed R. Achuff, joining with his wife, Daisy, conveyed the real estate here in question for an expressed consideration of one dollar to F. E. Clingan, who, in turn, for an expressed consideration of one dollar, conveyed said real estate to E. R. Achuff and Daisy E. Achuff, husband and wife, thereby creating an estate by the entirety in Ed R. Achuff and his wife, Daisy. The Gallatin Granite & Marble Works continued as a corporation until the month of December, 1924, at which time it was by consent of the shareholders dissolved. Its capital stock was $6,000, divided into sixty shares of the par value of $100 each, and at the time of the dissolution Achuff owned thirty shares thereof, including the fifteen shares which he had obtained from these plaintiffs. The assets of the corporation were divided in kind at the time of the dissolution thereof in so far as it was possible to do so. Its assets at the time of dissolution invoiced at $6,850, exclusive of notes and accounts due the corporation. The notes amounted to from $5,000 to $6,000, of which Achuff received

one-half, including a note of Charles Evans for approximately $1,500. The cash in the bank was divided. The accounts due the corporation amounted to between $2,000 to $3,000, a considerable portion of which was paid prior to Achuff's death. W. Glen Smith, who owned one-half of the stock of the corporation, or thirty shares, paid Achuff in cash, at the time of the dissolution, the sum of $3,425, representing one-half of the invoice value of the stock of granite and marble. This sum was paid in two payments. On December 18, 1924, a payment of $925 was made, which was placed in the Farmers Exchange Bank, Gallatin, Missouri, to the credit of Daisy E. Achuff. On Decembed 30, 1924, the remaining $2,500 was paid, and it was immediately loaned to Homer Feurt, president of the same bank, now defunct, who claims that he gave a note for the amount payable to E. R. Achuff and Daisy E. Achuff, husband and wife. The Evans note above mentioned was paid June 1, 1925, and of this amount $1,000 was on the same day placed on time deposit in the First National Bank, Gallatin, Missouri, in the name of E. R. Achuff and Daisy E. Achuff. All of these sums are claimed by defendant Daisy Achuff as her own property. Shortly after Ed R. Achuff's death, on or about June 4, 1925, his widow, Daisy, offered for probate, and there was probated, in Daviess County, Missouri, an instrument purporting to be his last will and testament, Plaintiffs' Exhibit 13, said instrument being in words and figures, as follows:

"'Last Will.

"'I, Edward R. Achuff, of Gallatin, Missouri, do hereby make, publish and declare the following to be my last will and testament.

"'I hereby direct my executrix hereinafter named and appointed to pay all my just debts without having the same allowed by the Probate Court.

"'First: Not having any children or their descendants to whom to leave my property I therefore give, devise and bequeath to my beloved wife Daisy Achuff all my property of every kind and description and where ever situate for and during her natural life with this provision however, that should it become necessary to use or dispose of any or all of my property for the support and comfort of my wife, then and in that event she is hereby authorized to convert, use, sell or dispose of any or all of my property for such purpose as she shall deem sufficient for her support and comfort.

"'Second: At the death of my said wife Daisy, I hereby give, devise and bequeath to Mary E. Ragsdale, John Ragsdale, Bird Selsor, Sallie Eller, Lela Spenser and James E. Ragsdale the sum of Five Thousand ($5000) Dollars to be divided among them share and share alike.

" 'Third: At the death of my said wife Daisy and after item number two above has been paid I give, devise and bequeath all the residue of my estate to the heirs of my said wife Daisy.

" 'Fourth: I hereby appoint my wife Daisy sole executrix of this my last will and testament hereby revoking all former wills by me made, and it is my will that she act as such without being required to give any bond. In witness whereof, I hereto set my hand this the 22nd day of October, 1920.

" 'EDWARD R. ACHUFF.

" 'The above and foregoing was on the day of the date thereof signed by the above named Edward R. Achuff as and for his last will and testament and he in our presence signed said will and we in his presence and in the presence of each other have signed our names as witnesses, and the said Edward R. Achuff declared said instrument to be his last will and testament.

" 'L. B. GILLIHAN
" 'B. H. GILLIHAN.'

"The defendant, Daisy Achuff, shortly thereafter, duly qualified as executrix of the estate of Ed R. Achuff, and thereafter, at all times, was the duly qualified and acting executrix of said estate under said will. An inventory filed in the probate court showed an appraisement of the estate at the sum of $5,530. The first settlement filed thereafter showed a balance of only $1,884.38 in the estate.

"The evidence offered by the defendants consists largely of statements said to have been made by Ed R. Achuff after his marriage to the defendant Daisy Achuff and within a year or two before he died. Several of his neighbors and acquaintances, including one of Daisy's brothers-in-law, testified that Ed told them 'he had to promise Daisy everything he had to get her to marry him;' that 'he had fixed everything for Daisy;' that 'he had made everything safe for Daisy;' that 'he had fixed everything so that if Daisy died first he would get it, and if he died first Daisy would get it.' According to the testimony of some of these witnesses, these statements, and other statements to the same effect, were made by Ed in the presence of Daisy on various occasions. One of these witnesses said that Ed told him—'he had fixed everything for Daisy, in the evening after he had made his will that day.' Another one of these witnesses said that Ed told him—'he had fixed everything so that if Daisy died first he would get it, and if he died first Daisy would get it,' immediately after Ed and Daisy came back from the bank, where Ed told him they had gone to 'fix up his business.' Some of these witnesses and other witnesses testified that, after Ed and Daisy were married, various improvements were made on the real estate involved in this suit, including an addition to the house, a sleeping porch, a bathroom, new hardwood floors, and the installation of a furnace and

sewerage facilities, and that Ed told them Daisy paid for these improvements out of her own money. 'Another one of Daisy's brothers-in-law said Ed told him—'Daisy was putting her money in this property, quite a good deal of it, because he did not have it to expend on these improvements.' John Williams testified that he did some of the carpenter work on these improvements in 1920 and 1921. He further testified: 'Was employed to do that work by Mr. and Mrs. Achuff; Mr. Achuff paid for part and Mrs. Achuff paid for part. Do not remember how much Mrs. Achuff paid.' A. F. Seiler testified: He installed bathroom and toilet equipments and sewerage connections 'for Ed R. Achuff and his wife' in 1920. 'I talked to both of them. I did the sewer construction before-and contracted for the balance, and they paid for that and then for the bathroom probably, it all amounted to $425.80. The sewer part was $85.28. Mrs. Achuff gave three checks, first one I presume $85.28, but it doesn't show here (in his book). When they made final payment, two together (two checks) were for $405.90. The last one was for $19.90, was for guttering and downspout, that was separate from the other contract.' Homer Fuert, president of Farmers Exchange Bank of Gallatin, testified: 'Gave note (for $2500) payable to E. R. and Daisy Achuff. He (Ed) said he wanted to give Daisy his property and wanted her to be sure and get this note. He said that he promised Daisy his property and wanted to be sure she got it in case of his death. I think the money for that note came from a check Ed had for $2,500, Glen Smith's check It (the note) has not been paid. Demand for the payment has been made by Mrs. Achuff.' The defendant Daisy Achuff testified, at the trial, that she 'had property worth close to $5,000' when she married Ed R. Achuff.

"In rebuttal, the plaintiffs offered in evidence Interrogatory 9 and Answer to Interrogatory 9, from the files of the probate court, in which the defendant Daisy Achuff was asked what property or money she had at the time of her marriage to Ed R. Achuff, and in which she answered: 'I had around four thousand dollars in notes and bonds and money.' Other evidence offered by the plaintiffs in rebuttal shows that, at the time of Ed R. Achuff's death, the defendant Daisy Achuff had $3,869.60 in the Farmers Exchange Bank of Gallatin, in a savings deposit, $485.79 in a demand deposit, and $1100 in U. S. Gov't bonds, a total of $5,455.39. The plaintiffs also offered in evidence, in rebuttal, a cancelled check (Plaintiffs' Exhibit 22) for $350, dated June 18, 1920, payable to A. F. Seiler, drawn on the account of the Gallatin Granite & Marble Works, in Ed R. Achuff's handwriting and signed by W. Glen Smith, 'Sec'y-Treas.;' and check stubs of the Gallatin Granite & Marble Works. showing a check to Fuller Lumber Company for $240.20, dated

July 2, 1920, and a check to Lambert Lumber Company for $201.05, dated November 1, 1920. Thad Martin, of the Lambert Lumber Company, testified for the plaintiffs, in rebuttal, that the furnace was bought from his company for $201.05, and that Mr. Achuff gave him the check, but he could not recall on whose account the check was drawn.''

Other pertinent facts and proceedings will be noted in connection with the discussion of the questions presented for our determination.

The trial court found all of the issues in favor of the plaintiffs. On the first count of the petition, it found that, at the time of the death of Ed R. Achuff, the reasonable market value of the fifteen shares of stock in question was $2,960, and that the estate of Ed R. Achuff is indebted to the plaintiffs in said sum; and it adjudged that the plaintiffs have and recover from the estate of Ed R. Achuff and from Daisy Achuff, executrix of said estate, the sum of $2,960, with six per cent interest from the date of Ed R. Achuff's death; that said judgment is a lien against the estate of Ed R. Achuff, prior and paramount to all claims of Daisy Achuff, as the widow of Ed R. Achuff; ''and that execution issue therefor.'' On the second count, it adjudged that the contract between the plaintiffs and Ed R. Achuff, relating to the real estate described in the petition, be specifically performed; that the title to said real estate is vested in the plaintiffs as tenants in common, free of all claims of Daisy Achuff, either in her own right, or as the widow of Ed R. Achuff, or as executrix of his estate; that the sum of $20 is the reasonable value of the monthly rents and profits of said real estate; that the purported conveyances of said real estate from Ed R. Achuff to F. E. Clingan and from F. E. Clingan to Ed R. Achuff and Daisy Achuff are void and of no effect; and that the purported last will and testament of Ed R. Achuff, admitted to probate in the Probate Court of Daviess County, in so far as it conflicts with the rights of the plaintiffs, as hereinabove adjudged, is void and of no effect.

I. The defendants say that they were entitled to a jury trial on the first count of the plaintiffs' petition and complain of the action of the trial court in depriving them of a jury trial on that count in the absence of a waiver of a jury on their part. The above statement of the pleadings is a sufficient answer to this complaint. By the first count of their petition, the plaintiffs ask specific performance of their contract with Ed R. Achuff relating to the fifteen shares of stock in the Gallatin Granite & Marble Works owned by Winnie Achuff at the time of her death. Moreover, the defendant Daisy Achuff, in her separate answer, sets up an equitable defense to the first count, as well as the second

count, of the plaintiffs' petition. The whole case was pleaded, heard and submitted in the trial court as an equity case, and will be so considered by us on this appeal.

II. The defendants also say that W. S. Eller, husband of the plaintiff Sallie Eller, is not a competent witness in this case. This witness testified concerning the negotiations between Ed R. Achuff and the plaintiffs which resulted in the making of the contracts (Plaintiffs' Exhibits 1 and 6) sought to be enforced by the plaintiffs in this suit. He was *not* one of the original parties to these contracts or the cause of action in issue and on trial, within the meaning of Section 5410, Revised Statutes 1919, and therefore is not disqualified as a witness because of the death of Ed R. Achuff. Nor does the fact that his wife is a party to this suit disqualify him as a witness. [New Sec. 5415, Laws 1921, p. 392.]

III. We will consider next the plaintiffs' challenge of the admissibility of the statements said to have been made by Ed R. Achuff. Some of these statements were offered as proof of his alleged antenuptial agreement to give the defendant Daisy Achuff all of his property if she married him, and the other statements were offered as proof of his alleged agreement to have the title to the real estate in question vested in himself and her as tenants by the entirety if she paid for certain improvements on said real estate. Concededly, these statements were made long after the contracts between Ed R. Achuff and the plaintiffs were entered into and during the time he held the fifteen shares of stock and the real estate in question subject to the rights of the plaintiffs under said contracts. In making these statements, he assumed the right to dispose of said shares of stock and said real estate and all of his own property as he saw fit and without limitation. Thus it appears that these statements were not against his interests but were self-serving and against the interests of the plaintiffs; and, not having been made in the presence of the plaintiffs, these statements were clearly inadmissible, and cannot now be considered as competent evidence. [22 C. J. 235, sec. 218; Weller v. Collier (Mo. Sup.), 199 S. W. 974, and cases cited.]

IV. This brings us to a consideration of the case on the merits. Upon the death of Winnie Achuff, childless and intestate, Ed R. Achuff had no homestead interest in the real estate left by her (Collier v. Porter (Mo. Sup.), 16 S. W. (2d) l. c. 58); nor did he have any other interest in her property which interfered with his right to contract with her heirs, the plaintiffs, as to the disposition to be made of her prop-

erty during his lifetime and at his death. And that he did so contract with the plaintiffs is not disputed. Indeed, the plaintiffs say, in their brief: "That Ed R. Achuff entered into the two written contracts in evidence there is no question." It will be noted that, in the written contract relating to the fifteen shares of stock, he agreed to bequeath said shares of stock to the plaintiffs, and, in the event he sold said shares of stock, to bequeath to the plaintiffs the proceeds of such sale, or other property or money of equal value, in lieu of said shares of stock. It will also be noted that the written contract relating to the real estate provides "that he will at his death, in case he shall make any conveyance of the said real estate, will and devise" to the plaintiffs money or other property of equal value, and that it is silent as to his obligation to the plaintiffs in the event he did not make any conveyance of said real estate. However, it cannot be seriously contended that he was not obligated to devise said real estate to the plaintiffs in the event he did not convey it. The proof of the verbal agreement shows that he was so obligated, and the will (Plaintiffs' Exhibit 2) in which he bequeathed all of his property to the plaintiffs indicates that this part of the verbal agreement was omitted from the written contract through the mistake or oversight of the scrivener.

It would seem that, in making the will in which he bequeathed all of his property to the plaintiffs, Ed R. Achuff started out, in good faith, to perform his obligations under his contracts with them. Be that as it may, it is clearly established that, after his marriage to the defendant Daisy Achuff, he undertook to escape the performance of those obligations by placing the fifteen shares of stock and the real estate in question and all of his own property beyond the reach of the plaintiffs; that, in pursuance of such purpose and intention, he made the will (Plaintiffs' Exhibit 13) in which he bequeathed all of his property to his wife for and during her natural life, with the right to dispose of all or any part thereof for her support and comfort; that he caused to be made the conveyances (Plaintiffs' Exhibits 8 and 9) by which he attempted to have the title to the real estate in question vested in himself and his wife as tenants by the entirety; and that he gave to his wife a part of the money received by him for the fifteen shares of stock in question and so manipulated the remainder of the money that, at his death, it could be claimed by her as her money. With the proof of his statements excluded, for the reasons above given, there is no proof of his alleged antenuptial contract to give the defendant Daisy Achuff all of his property if she married him, and no substantial proof of his alleged agreement to have the title to the real estate in question vested in himself and her as tenants by the en-

tirety if she paid for certain improvements on said real estate. And, even though considered as competent, the proof of these statements is of little probative value in the situation presented by the record now before us. [Essey v. Bushakra, 299 Mo. 147, 252 S. W. 459.] Hence we conclude that there was no valid consideration for the conveyances of the real estate in question; that these conveyances, and the manipulations of the funds derived from the sale of the fifteen shares of stock in question, and the will last mentioned, were resorted to by Ed R. Achuff for the purpose of defeating the rights of the plaintiffs under his contracts with them, and that, therefore, said transactions were fraudulent; that said conveyances are void and of no effect; that said will is void and of no effect in so far as it conflicts with the rights of the plaintiffs under said contracts; and that the plaintiffs are entitled to recover from the estate of Ed R. Achuff the reasonable market value of said shares of stock at the time of his death, and to have the title to said real estate vested in them, and to the other relief prayed for in each of the two counts of their petition.

V. The defendants finally say that the judgment is "erroneous, in that it orders that execution issue for the sum allowed" on the first count of the petition. True, the statute (Sec. 1629, R. S. 1919) provides that no execution shall issue upon any judgment against the estate of a deceased person, or his or her executors or administrators. But, the mere recital in the judgment in this case that "execution shall issue" does not render the judgment "erroneous," nor affect its validity; nor does it interfere with the right of the plaintiff to have a copy of the judgment certified to the probate court of Daviess County for further proceedings in that court, as provided in Section 188, Revised Statutes 1919. In this connection, see also State ex rel. v. Burney (Mo. Sup), 23 S. W. (2d) l. c. 119.

As above indicated, we are in full accord with the conclusions reached and the judgment rendered by the learned chancellor who heard this case below. The judgment is right, just and equitable. It is accordingly affirmed. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court All of the judges concur.