Reuben FISHER, Respondent,

v.

Harold COX, Trustee under Deeds in Trust Executed by Joe Hall, Appellant,

Ola Mae Fisher, Dollie Vaughn, I. A. Fisher, H. P. Fisher, O. H. Fisher, R. H. Fisher, Mary Weaver, Joe Hutchinson, George McCarty, Hubert McCarty, John McCarty, Frank McCarty, Cenie Humphreys, Lillie Forsee, America Jones, Fred Hall, Joe Hall, Maxine Wallace, Parker Hall, Jeff Hall, Ola Mae Hayes, Josephine Sydenstricker, and Ruby Weaver, Defendants.

No. 46106.

Supreme Court of Missouri,

Division No. 2.

May 12, 1958.

Edwin C. Orr, Orr & Sapp, Columbia, for appellants Harold Cox, Trustee, Joe Hutchinson, George McCarty, Hubert McCarty, Cenie Humphreys, Lillie Forsee, America Jones, Fred Hall, Joe Hall, Maxine Wallace, Parker Hall, Jeff Hall, Ola Mae Hayes, Josephine Sydenstricker and Ruby Weaver.

David V. Bear, Robert Hines, Sapp & Bear, Columbia, for respondent Reuben Fisher.

BOHLING, Commissioner.

Reuben Fisher seeks the specific performance of an oral contract by Joe Hall to devise to him the fee to 157.66 acres of land, described in the petition, in Boone county, Missouri. Mr. and Mrs. Hall had many nieces and nephews but no descendants, plaintiff being a nephew. Mrs. Hall died April 12, 1953. Joe Hall died December 26, 1954, at the age of 87 years. In 1953 Mr. Hall executed trust agreements vesting title to his real estate in trustees for the use and benefit of named beneficiaries, and conveyed said 157.66 acres to the trustee for the plaintiff and his wife to reside upon and use the same for life, subject to certain conditions, with remainder in fee over, violating said alleged contract between Joe Hall and plaintiff. Harold Cox was the trustee at the time of suit. No issue exists respecting the joinder of all necessary parties defendant. Plaintiff's pleaded contract, in substance, was that in 1932 Joe Hall and his wife were growing old, had no children, and to induce plaintiff to remain near his home, Joe Hall promised plaintiff to devise said land to plaintiff if he, plaintiff, "(1) would move onto said property and make his home thereon during the remaining days of Joe Hall's life, and (2) would keep the buildings thereon

insured against fire and/or wind at his own expense and (3) would promptly pay all taxes annually assessed against said property as they became due from year to year, and (4) would pay in the beginning $150.00 and later $125.00 per year to Joe Hall."

The decree was for the plaintiff. Harold Cox, the trustee, appealed. He contends, among other things, that Ola Mae Fisher, respondent's wife, was not a competent witness and without her testimony respondent did not make a case; that the title to said land was adjudicated to be in said trustee in another action and said judgment is not subject to collateral attack, and respondent, having failed to set up any claim to the land in said action, is now estopped to claim any interest therein.

Mrs. Dollie Vaughn, after her mother, Joe Hall's sister Susie Puyear, died, lived in respondent's home until his mother, Joe Hall's sister Dollie Fisher, and father died. Dollie, then fifteen, went to live with Mr. and Mrs. Hall. She testified that she and respondent were reared as sister and brother. Mr. and Mrs Hall also took Joe Hutchinson, who was not related to them, into their home when he was twelve. He remained there after Mr. Hall's death. Witnesses testified he would get drunk and be placed in jail and was not stout or dependable. He was a principal life beneficiary under Mr. Hall's trust instruments, which carried a spendthrift trust provision for his benefit.

Respondent was married and since 1924 had been a tenant on an adjoining farm of Thomas Van Sant across the Boone-Callaway county line. The Hall home was in Callaway county and about one-half mile from the 157.66 acres. Rovira Allen owed Joe Hall money on the 157.66 acres and, unable to pay the interest and taxes, deeded and surrendered it to Joe Hall in September, 1932.

Respondent's wife, when questioned upon taking the stand by appellant's counsel for the purpose of objecting, testified:

"Mrs. Fisher, are you a party to the agreement with Uncle Joe Hall? A. I am not a party to the agreement, no. He made the agreement with Reuben. * * *

"Q. Did he make any agreement with you at all? A. No, sir, only I was to help Reuben help them when they needed help.

"Q. You had an agreement with Uncle Joe that you were to help Reuben help them when they needed help? A. In case of sickness or work, whenever they needed it.

"Q. Whenever they needed it you were to help them? A. Yes, sir.

"Q. And that was part of the agreement? A. That was part of the agreement."

The court permitted Mrs. Fisher to testify subject to appellant's objection. She repeated she was not a party to the agreement and that Mr. Hall did not agree to will or deed any part of the land to her. Appellant's objection was later overruled.

Defendant states Mrs. Fisher's testimony was not admissible under the "Dead Man's" statute (§ 491.010 RSMo 1949, V.A.M.S.) since she testified to facts that would make her an original party to the contract and a party in interest; citing the following Missouri cases: Forrister v. Sullivan, 1910, 231 Mo. 345, 132 S.W. 722, 732(3); Oliver v. Johnson, 1911, 238 Mo. 359, 142 S.W. 274, 279 [4]; and Allen v. Jessup, Mo.1917, 192 S.W. 720, 722 [4], 723. At the time of the above cases a husband or wife was disqualified as a witness in a civil suit prosecuted in the name of the other except, so far as material here and briefly stated, as to business transactions conducted by the one as the agent for the other. R.S.1909, §

6359. By Laws 1921, p. 392, § 5415 (now § 491.020) the disqualifications of one spouse as a witness in a civil suit by or against the other spouse were removed, except as to admissions or confidential communications. Martin v. Abernathy, 220 Mo.App. 76, 278 S.W. 1050 [1, 4]; Vosburg v. Smith, Mo. App., 272 S.W.2d 297, 304 [20].

■ It is stated in 58 Am.Jur. 181, § 288, that the interest to disqualify a witness under the statute "must be present, certain, and vested, not uncertain, remote, or contingent, and must be in the event of the action." See 97 C.J.S. Witnesses § 168, p. 607. An inchoate interest has been considered not to disqualify a witness. Pope v. Hogan, 92 Vt. 250, 102 A. 937, 938 [1]; Clawson v. Wallace, 16 Utah 300, 52 P. 9 [2]. Our statute was based on the Vermont act. Anchor Milling Co. v. Walsh, 108 Mo. 277, 281, 282, 18 S.W. 904, 905.

A reading of appellant's case of Allen v. Jessup, supra, discloses that plaintiff's husband was disqualified as a witness because at the time he purported to act as her agent in dealing with deceased he had a secret present, actual and vested interest in the transaction.

In Ragsdale v. Achuff, 324 Mo. 1159, 27 S.W.2d 6, 12 [2], a husband who had joined with his wife, one of the plaintiffs, in a deed to a grantee in consideration of the grantee's agreement to devise the land to the plaintiffs was considered not disqualified under the "Dead Man's" statute to testify to the negotiations with the deceased grantee.

Whatever part Mrs. Fisher had in the transaction with Joe Hall was for the benefit of her husband. In Temm v. Temm, 354 Mo. 814, 191 S.W.2d 629, 632 [11], Joseph Byrne turned over his business to Robert Temm, a nephew, with the understanding that Robert's brother Edward, who had been called into the service in World War I, was to have a one-third interest therein. Robert agreed to this. Edward learned of this arrangement after Robert's death. In holding Byrne a competent witness to establish Edward's interest, we said:

"Appellants question the competency of Byrne to testify under Section 1887, R.S.1939, Mo.R.S.A. because Robert is dead. Such question was ruled in Signaigo v. Signaigo, Mo.Sup., 205 S.W. 23, and Darnell v. Darnell, Mo.Sup., 174 S.W.2d 812, contrary to appellants' position. The latter case was reported and annotated in 149 A.L.R. 1125, where the rule is announced that 'the weight of authority holds that one entering into a contract for the benefit of a third person is not an incompetent witness (at least if he is not a real party in interest in the action) to testify in respect thereto in the beneficiary's action against the estate, personal representatives, heirs or other persons claiming under or through the deceased party to the contract, either on the theory that such person has no self-interest in the event or outcome of the litigation, or on the theory that he is not "a person from, under, or through whom" the beneficiary (a party to the action) claims his title or interest in the action.' "

The Darnell case, supra, 174 S.W.2d loc. cit. 815 [1–3], held the mother of an illegitimate son was not disqualified to establish an agreement with the father to devise certain land to their son in consideration of the mother permitting the father to retain the son's custody and supervise his rearing and education, her testimony "not being in her own favor or in favor of any party to the action claiming under her" within the meaning of said § 491.010. The Darnell case stated Asbury v. Hicklin, 181 Mo. 658, 81 S.W. 390, was no longer followed on the point.

■ Appellant's contention is disallowed.

Ola Mae Fisher, respondent's wife, testified that Mr. Hall came to their home in the

Fall of 1932 and in the presence of her husband and herself "talked to us to see if we wouldn't move over on his place," the 157.66 acres; that if they would do so and her husband would pay the insurance and taxes on the place and $150 a year interest, and help Mr. and Mrs. Hall when they needed help, "that he would leave the place to Reuben in his will."

In 1932 or the first part of 1933 Thomas Van Sant, who was the executive officer of the Callaway Bank of Fulton at the time of trial, went to Mr. Hall's home and told Mr. Hall respondent "wanted to leave my land to go on land that belonged to Mr. Hall." Mr. Hall said that was correct; that respondent was a nephew, was a good young farmer and he wanted him to make his home on the 157.66 acres next to the Hall home place instead of the Van Sant place, and had made an agreement with respondent that if respondent would give him $150 a year and pay the taxes and insurance on the land so long as Mr. Hall lived, respondent was to have the farm. Mr. Van Sant told Mr. Hall he did not want to deprive respondent of any benefits but the arrangement "was working a hardship on me because he had already started the crop year for 1933," and he asked Mr. Hall to let respondent finish the crop for 1933. Mr. Hall agreed to this. He testified that after finishing the 1933 crop, respondent moved onto the 157.66 acres and had lived there ever since except for one crop year during World War II when he returned to the Van Sant farm after Mr. Van Sant had secured Mr. Hall's consent for him to do so. Respondent moved back and has been on the 157.66 acres ever since finishing that crop.

Mr. Van Sant stated that on two occasions, one in 1940 and the other in 1945, when he had Sunday dinner at the Hall home, he had two practically identical conversations with Mr. Hall to the following effect: "I said, 'How are you going to give that land to Reuben? Have you given him a deed?' And he said, 'No, I have not, I have it provided in my will.' And I said, 'Why don't you give him a deed and retain your life interest' and he said, 'Tom, it is in my will'. And I said, 'Maybe you will get old and change your mind some day. You are all right now but maybe you will get old and childish.' He said, 'When I make up my mind it is made up, it is in my will and he will get it.'"

Other witnesses testified to a conversation or conversations with Mr. Hall corroborative of the above testimony of Mrs. Fisher and Mr. Van Sant. Among such witnesses were Roy M. Todd, an insurance agent, Judge Elmer Ward, a boyhood friend of Mr. Hall, Rovira Allen, Clarence Kennett, Charles and Martha Fisher (no relation to respondent), Howard Oliver, Earl Kennett and Mrs. Dollie Vaughn, a first cousin of respondent, all neighbors of Mr. Hall.

One or more of the following witnesses: Roy M. Todd, Clarence Kennett, Thomas Van Sant, Martha Fisher (not related to respondent), Howard Oliver, and Earl Kennett, testified to one or more of the following statements: The association between Mr. Hall and respondent was intimate and friendly. Mr. Hall was fond of respondent. Respondent would take Mr. and Mrs. Hall places, help Mr. Hall with his livestock and other work on Mr. Hall's farm, and Mr. Hall depended on respondent. Mr. Hall stated Mrs. Vaughn and respondent were the only two he could rely on; that respondent was a good manager and neighbor; that Mr. Hall never expressed dissatisfaction or complained about what respondent was doing and said his deal with respondent was working out all right. Mr. Hall always referred to the 157.66 acres as "Reuben's place" or "Reuben's farm."

Respondent made improvements on the house in 1950. Charles Fisher, not related to respondent, testified that about this time Mr. Hall told witness respondent wanted to pay for the farm and secure a deed before making the improvements, but that

Mr. Hall said he told respondent: "No, I give you that farm, I don't want you to pay for it. I want you to have it."

Respondent put on a new roof, installed a water and sewer system, with complete bath, wired the house for electricity, insulated it, and made other improvements at a cost of $2,849.77 or more. Respondent also improved the soil on the farm, expending approximately $795 therefor. This work and respondent's payments therefor were established by the testimony of the individuals involved, respondent's checks issued in payment thereof, and other testimony.

Roy M. Todd, the insurance agent, testified that he saw Mr. Hall every time a policy was to be renewed; that Mr. Hall said respondent could see his (Hall's) will at the bank any time he wanted to; that respondent paid the insurance premiums by check from 1937 to 1952. After respondent made his improvements, witness told Mr. Hall the insurance should be increased from $1,500 to $3,000 and Mr. Hall "said it was up to Fisher." The insurance was increased and a new policy was issued in the names of Mr. Hall and respondent. Respondent's wife was not named in the policy. Mr. Hall paid the insurance premiums on his other property.

Respondent introduced his checks to Joe Hall of $125 each for the "interest" for the years 1951 through 1954, as well as two or three checks for years prior thereto; and checks to Joe Hall, marked "for taxes" or to the county collector of revenue which on their face indicated they were for taxes falling due in the years 1951 through 1955. Mrs. Fisher testified she produced all the checks that could be found covering the insurance, taxes and interest; that the checks for the earlier years had been lost or destroyed; and that of her own knowledge respondent paid all premiums on the insurance, all taxes, and all interest payments except for the year 1936, which Mr. Hall told respondent he would not have to pay on account of the drought and crop

failure. She testified that the interest was $150 yearly at first, but was reduced to $125 during the drought years of the 1930s. She is corroborated in these statements by the checks offered in evidence to the insurance company and the testimony of its agent, and by Mrs. Vaughn's testimony that under an arrangement with Mr. Hall she was to pay the same interest respondent paid and that she paid $125 a year up to Mr. Hall's death. There were other admissions against interest on the part of Mr. Hall in his statement to Mr. Todd that respondent was to pay the taxes and insurance and that respondent paid it, and his statement to Mr. Van Sant that "his deal with Reuben was working out all right," and Mr. Hall's continuing to accept, endorse and cash the $125 annual interest payments.

■ Mr. Hall executed a will in 1943 in which he devised the 157.66 acres to respondent.

On June 11, 1953, Joe Hall executed a "Deed in Trust" and on November 18, 1953, an amendment thereto. These trust instruments disposed of Joe Hall's title to said 157.66 acres and other land. We understand, briefly stated for the purposes here, the effect of the trust instruments was to convey the title to trustor's lands to the trustee for trustor's use and benefit for life and to give to the respondent and his wife the right to reside upon and use said 157.66 acres only for the life of the survivor of them and subject to the conditions and payments set forth in said trust instruments.

Joe Hall was duly adjudged incompetent on March 18, 1954. Thereafter, in 1954, Joe Hall, by his duly qualified guardian Thomas H. Van Sant, Reuben W. Fisher and certain heirs at law of said Joe Hall joining as plaintiffs, instituted a suit against the trustee and other beneficiaries of said trust instruments to set the same aside, alleging mental incapacity and undue influence by Joe Hutchinson as grounds therefor, and for an accounting by the

trustees. The answer put in issue the grounds alleged for relief in the petition, and closed with a general prayer for judgment and for costs. This case was submitted to the court on December 2, 1954. On August 9, 1955, the court found that at the time of the execution of said trust instruments Joe Hall was mentally competent and that said instruments were not the result of undue influence by Joe Hutchinson; and in the decree and judgment stated in part (stressed by appellant) "that said instruments are legal, valid and binding instruments, and authorize the trustee, Harold E. Cox, to handle, manage, control and dispose of said property in accordance with the terms of said two instruments."

Appellant's contention that the judgment in the suit to set aside the trust instruments is res judicata of the instant suit and that respondent is estopped by said judgment to assert any interest in and to the 157.66 acres is not well taken. Abeles v. Wurdack, Mo., 285 S.W.2d 544, 547 [3], cited by each party, states, after discussion: "Therefore, the judgment in the suit by plaintiff on the express contract is res judicata as to those questions, points or matters of fact in issue which were essential to a decision in that case, and upon the determination of which the judgment was entered, but not to other issues." The ultimate fact issues in the 1954 suit were whether Joe Hall was mentally competent to execute the trust instruments of 1953 and whether said instruments were the result of undue influence upon Joe Hall by Joe Hutchinson. The issues in the instant case are whether Joe Hall entered into the oral contract of 1932 pleaded by respondent and performance of said contract by respondent. The issues determinative of the 1954 suit were not determinative of the instant suit. Abeles v. Wurdack, supra, 285 S.W.2d loc. cit. 548 [8]; Peters v. Platte Pipe Line Co., Mo., 305 S.W.2d 413, 417 [4]; Healy v. Atchison, T. & S. F. R. Co., Mo., 287 S.W.2d 813, 815 [2]. In addition, respondent's instant claim did not arise until the death of Joe Hall on December 26, 1954, and was not in existence on December 2, 1954, when the suit to set aside the trust instruments was submitted for determination. In the circumstances the judgment in the suit to set aside the trust instruments should not operate as res judicata or as an estoppel of the instant claim which was not in existence when the former suit was submitted and has never been determined. Consult State ex rel. Anderson Motor Service Co. v. Public Service Comm., 234 Mo.App. 470, 134 S.W. 2d 1069, 1075, adopted 348 Mo. 613, 154 S.W.2d 777, 780; Wrather v. Salyer, Mo. App., 274 S.W. 1106 [2, 3]; Deke v. Huenkemeier, 289 Ill. 148, 124 N.E. 381, 384 [4–8]; Moseley v. Welch, 218 S.C. 242, 62 S.E.2d 313, 319 [11, 12]; 2 Freeman, Judgments, 5th Ed., 1503, § 712, 1510, § 716; 30A Am. Jur. 379, § 335; 50 C.J.S. Judgments §§ 650, 712 b, 730, pp. 92, 180, 218.

■ There is no merit in appellant's contention that respondent's contract with Joe Hall may not be enforced against appellant, said trustor's trustee. The title acquired by the trustee to the property of this voluntary trust was subject to existing rights therein against the grantor. Thompson v. St. Louis Union Trust Co., 363 Mo. 667, 253 S.W.2d 116; Young v. Hyde, 255 Mo. 496, 164 S.W. 228, 230 [1]; 90 C.J.S. Trusts § 180, p. 68. Consult Stellwagen v. Grissom, Mo., 177 S.W. 636, 639 [6]; Ragsdale v. Achuff, 324 Mo. 1159, 27 S.W.2d 6, 13 [5–7]; 94 C.J.S. Wills §§ 117 b, 119, p 877.

The requirements set forth in Walker v. Bohannan, 243 Mo. 119, 147 S.W. 1024, 1028, and Forrister v. Sullivan, 231 Mo. 345, 132 S.W. 722, 730, for the specific performance of the oral contract here involved have been met by respondent.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.